UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ERIK SALAIZ,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ENSURE HEALTH GROUP CORP. d/b/a EFFICIENCY HEALTH GROUP, CORP a Delaware Corporation, and **FRANTZ SAINTVAL**<br>　　　　　　Defendants. | §§§§§§§§§§§§§§ **EP22CV0076** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.　The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.　Defendant ENSURE HEALTH GROUP CORP. d/b/a EFFICIENCY HEALTH GROUP, CORP. ("EHG") is a corporation organized and existing under the laws of Delaware with a principle address at 9715 W Broward Boulevard #200, Plantation, Florida 33324 and can be served via registered agent Cristhian Crevoisier 9715 W Broward Boulevard #200, Plantation, Florida 33324.

3.　Defendant FRANTZ SAINTVAL (" Saintval") is a natural person, resident of Florida, and President of EHG and can be served at 9715 W Broward Boulevard #200, Plantation, Florida 33324.

4.　Defendant EHG, and Saintval altogether ("Defendants")

### JURISDICTION AND VENUE

1

5.     Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6.     Personal Jurisdiction. This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7.     Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

2

telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22. Plaintiff's personal cell phone has been on the National Do-Not-Call Registry since May 2021.

23. Plaintiff has never had any relationship with Defendants and never gave them his prior express written consent to receive the unauthorized robocalls alleged in this case.

24. On October 20, 2022 Defendant Saintval signed as the owner of a fictitious name registration (#G20000130853) with the Florida Secretary of State for Efficiency Health Group, Corp.

25. Through information and belief the Defendants use the same anonymous telemarketing company to make phone calls on their behalf soliciting health insurance plans.

26. Plaintiff received at least 5 unauthorized phone calls to his personal cell phone (915) 252-9280 from Defendants.

27. On January 26, 2022 Plaintiff received a call to his personal cell phone (915) 252-9280 from Defendant EHG from phone number (915) 937-9777.

28. Plaintiff answered and heard an artificial or prerecorded voice message that stated:

"Hello, I just wanted to know if you would like to see if you qualify for one of these insurance plans? Would you like to see if you qualify for one of these plans? Okay great well I just have a few questions for you to start to qualify is your annual household income at or below $50,000? Okay well may I transfer you over to an insurance specialist who can go over those options with you? Okay great well just hold on the line while I transfer you"

29. Plaintiff was then transferred to live representative named Michael. Michael advised Plaintiff he was with the healthcare enrollment center. Michael collected Plaintiff's name and stated the following:

"I'm going to ask you a few questions here to determine if you qualify for this special enrollment period and if you can say yes to any of the following questions we can help you get covered from little to no cost today."

30. Plaintiff advised Michael he was interested in a health insurance plan for the sole purposes of identifying the company responsible for the illegal robocall.

31. Michael solicited Plaintiff for a health insurance plan on behalf of Defendants.

32. Michael advised Plaintiff he was going to transfer him to the directing department for the final approval of Plaintiffs application.

33. Plaintiff was then transferred to another representative name Lucille.

34. Lucille verified Plaintiff's personal information and advised him her job is to help him find the best plan available at the lowest possible price. Lucille then stated:

"So I have some great news based on the information you provided me the best plan available is the bronze plus for $24.08 per month."

35. Lucille solicited Plaintiff for a health insurance plan on behalf of Defendants.

36. Plaintiff advised Lucille he was interested in a health insurance plan for the sole purposes of identifying the company responsible for the illegal robocall.

37. Plaintiff received an email from Lucille from noreply@benefitalign.com which contained the information of the company responsible for the unauthorized robocall.

38. On four separate occasions Plaintiff received a call to his personal cell phone (915) 252-9280 from Lucille from phone number (888) 421-2216.

39. Plaintiff never gave Lucille his prior express written consent to call him and follow up.

6

40. Plaintiff has never been a client of Defendants, and each follow up call from Lucille are not in any way, shape, or form considered a business relationship.

41. Defendant Saintval knowing and willfully authorizes anonymous telemarketers to place illegal robocalls as the one alleged in this case to millions of consumers en mass by using an ATDS.

42. Defendant Saintval controls and dominates EHG.

43. Defendant Saintval approves of the contracts with the telemarketers.

44. Defendant Saintval authorizes the payments to the telemarketers.

45. Defendant Saintval pays the telemarketers out of bank accounts he owns and controls.

46. Defendant Saintval approves of the scripts with the artificial or prerecorded messages soliciting health insurance plans on behalf of EHG.

47. Defendants on one occasion used a local area code (915) where Plaintiff resides to trick him into thinking the call was local.

48. Table below displays calls made to Plaintiff by Defendants:

| Date | Time | Caller ID |
|---|---|---|
| 1/26/2022 | 1:40pm | 915-937-9777 |
| 1/26/2022 | 5:30pm | 1-888-421-2216 |
| 2/1/2022 | 11:53am | 1-888-421-2216 |
| 2/3/2022 | 2:27pm | 1-888-421-2216 |
| 2/10/2022 | 1:09pm | 1-888-421-2216 |

49. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

50. Each and every call was placed while knowingly ignoring the national do-not-call registry. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

51. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to ccrevoisier@ehgcorp.com which is listed in the email received from Lucille as an email to contact for any questions.

52. Defendants website is https://ehgcorp.com that shows their customer service phone number as (888) 421-2216 the same number Plaintiff received from Lucille.

53. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

54. No emergency necessitated the calls.

55. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

56. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

57. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

58. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

59. Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## DEFENDANT SAINTVAL IS PERSONALLY LIABLE

1. Defendant Saintval refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Saintval financially.

2. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

3. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

4. Quoting Texas v. American Blastfax:

   The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

   To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who

controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

5. The Same Court held that corporate officers were also personally liable for DTPA violations

   The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

6. At all times material to the Complaint, acting alone or in concert with others, Defendant Saintval has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant EHG including the acts or practices set forth in this Complaint.

7. Defendant Saintval is the principal director and operator of Defendant EHG controls the day-to-day operations of EHG and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit health insurance plans.

8. Defendant Saintval approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

9. Defendant Saintval knowingly and willfully ignores the law. He continues to solicit health insurance plans via automated messages with prerecorded voice messages. These violations are the direct result of the instructions Defendant Saintval has given to his agents, employees, solicitors, salespersons, and others that carry out his schemes.

10. Defendant Saintval is not merely a bystander. His is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

11. Defendant Saintval is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Saintval is the sole director EHG and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Saintval has taken no steps to stop the behavior because the behavior benefits Saintval financially. Defendant Saintval breaks the law with his eyes and pocketbooks wide open.

12. Defendants Saintval should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

13. Defendant Saintval should be held liable because to do otherwise would simply allow him to dissolve EHG and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

### The Plaintiff's cell phone is a residential number

60. The calls were to the Plaintiff's cellular phone (915) 252-9280 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

61. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

62. The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I.   FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(c))

### (Against All Defendants)

1. Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the national do-not-call registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

3. Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1. Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

   c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

  3. Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

  4. Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

  5. Mr. Salaiz also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and EHG's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

  1. Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

  2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

---

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

3. Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4. Mr. Salaiz is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3,000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for five calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G. An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

March 4, 2022                                         Respectfully submitted,

15

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-252-9280
Salaiz.ep@gmail.com